UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREW GAYOT,

                            Plaintiff,

    v.

ADA PEREZ, SUPERINTENDENT; C.
CANDIDUS, SERGEANT; C. VINES,
CORRECTION OFFICER,

                            Defendants.

No. 16-CV-8871 (KMK)

OPINION AND ORDER

Appearances:

Andrew Gayot
Dannemora, NY
*Pro Se Plaintiff*

Sofya Uvaydov, Esq.
Office of the Attorney General, State of New York
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       Pro se Plaintiff Andrew Gayot ("Plaintiff"), currently an inmate at Clinton Correctional Facility, filed the instant Amended Complaint, pursuant to 42 U.S.C. § 1983, against three prison officials at Downstate Correctional Facility: Ada Perez, Superintendent ("Perez"); C. Candidus, Sergeant ("Candidus"); and C. Vines, Correction Officer ("Vines," and collectively, "Defendants"). (*See* Am. Compl. (Dkt. No. 8).) Plaintiff alleges that Defendants interfered with his incoming legal mail in violation of his federal rights. (*See id.* at 2–4, 8, 11.)[1] Before the

---

[1] The Amended Complaint does not use consistent numbering. For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top of the Amended Complaint.

Court is Defendants' Motion To Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Not. of Mot. (Dkt. No. 20); Mem. of Law in Support of Mot. ("Defs.' Mem.") (Dkt. No. 21).)

For the following reasons, the Motion To Dismiss is granted.

## I. Background

### A. Policy Background

New York State Department of Corrections and Community Supervision ("DOCCS") Directive 4421 sets out departmental policy for the handling of privileged correspondence, including legal mail. (*See* Defs.' Mem. Ex. 3 ("Directive 4421").)[2] To qualify as privileged, mail must be "delivered in an envelope bearing the identity and official business return address of" an "attorney, approved legal representative, representative employed or supervised by an attorney, or any legal services organization." (*Id.* at 1.) Incoming legal mail, which is given "priority handling," (*id.* at 3), "shall be opened and inspected[] in the presence of the inmate to whom it is addressed . . . , as unobtrusively as possible, [to ensure] that the correspondence does not contain material that is not entitled to the privilege," (*id.* at 4). If "material is found that does not appear to be entitled to the privilege, *all* parts of the correspondence shall be forwarded directly to the Superintendent without further inspection, and a report . . . shall detail the circumstances." (*Id.* (emphasis added).)

### B. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and the exhibits attached to it, (Dkt. No. 8), and are taken as true for the purpose of resolving the instant Motion.

---

[2] DOCCS Directive 4422 sets out departmental policy for the handling of general correspondence. (*See* Defs.' Mem. Ex. 2 ("Directive 4422").)

On October 13, 2016, while incarcerated at Downstate Correctional Facility, Plaintiff was called to collect his mail. (Am. Compl. 2.) Vines inspected the mail in Plaintiff's presence and "confiscated a memo and mail." (*Id.* at 2–3.) Vines then called Candidus, who "took the mail" and told Plaintiff the "legal mail was being sent to Superintendent Ada Perez for review." (*Id.* at 3.) Some two weeks later, Plaintiff was informed that the mail was misplaced. (*Id.*) The mail was never delivered to Plaintiff.

Plaintiff alleges that the October 13, 2016 incident "was not the first incident" his mail was "lost, misplaced, not opened in [his] presence or never delivered to [him] at all." (*Id.*) Plaintiff seems to identify three other incidents separate from the October 13 incident. On September 2, 2016 and September 9, 2016, unnamed DOCCS officers forwarded Plaintiff's mail to Perez for review on grounds that it was "legal correspondence over the 5 page limit from someone other than an attorney/legal source." (*Id.* Ex. A (Sept. 2, 2016 memorandum); *id.* Ex. B (Sept. 9, 2016 memorandum).) Plaintiff states that the mail referenced in the two memoranda was, as required by Directive 4421, "in an envelope bearing the identity and official business address of [his] attorney, [and was] marked legal mail, [but] was still not delivered to [him]." (*Id.* at 3.) And Plaintiff states that, on November 10, 2016, he "received legal correspondence marked legal mail" that "had been opened and reviewed out of [his] presence," contrary to the requirements of Directive 4421. (*Id.*; *see id.* Ex. C (Letter from Perez to Nancy Gonzalez).)[3] Plaintiff states that he "was never the subject of any penological sanction that required the

---

[3] The Amended Complaint includes a copy of the November 10, 2016 letter, sent by Perez to Nancy Gonzalez, a paralegal who had sent Plaintiff correspondence. (*See* Am. Compl. Ex. C.) The letter states, without explanation, that Gonzalez's correspondence to Plaintiff did not meet the requirements of Directives 4421 and 4422, that the correspondence had nevertheless been delivered to Plaintiff, and that Gonzalez should "for future reference keep in mind that department policy must be complied with." (*Id.*) It is not clear whether the mail referred to in the November 10, 2016 letter corresponds to the mail from the October 13, 2016 incident.

review of [his] mail." (*Id.* at 3.)

Plaintiff filed "several" administrative grievances regarding these incidents. (*Id.*) It is not clear from the Amended Complaint when these grievances were filed. However, on November 1, 2016, Plaintiff received a response from the Inmate Grievance Review Committee ("IGRC") as to the October 13, 2016 incident, which, according to Plaintiff's Complaint, stated that "[t]here is no provision in Directive 4421 that requires legal mail to be on official letterhead or that it cannot be handwritten" and that "[g]rievant's mail should not have been withheld and should be forwarded to him as quickly as possible if mail is proven to be legal." (*Id.* at 3–4.) Plaintiff appealed the IGRC's decision to Superintendent Perez. On November 15, 2017, Perez concluded that, as per Directive 4421, when an officer inspecting mail determines that the mail does not appear to be privileged, it should be forwarded directly to the Superintendent. (*Id.* Ex. D (Perez determination); *see also* Directive 4421 at 3–4.)[4] That same day, Plaintiff appealed Perez's determination to the Central Office Review Committee ("CORC"), contending that "[p]roper procedures were not correctly followed according to [D]irectives 4421 and 4422," that he "still ha[s] yet [to] receive the return of the legal correspondence," and that his "constitutional

---

[4] The Amended Complaint also states that, on November 9, 2016, Plaintiff received a letter sent by a prison official (not named as a Defendant) "on behalf of" Perez regarding the October 13, 2016 incident. (Am. Compl. 4.) According to Plaintiff, in that letter, "Candidus questioned [Plaintiff] on the type of relationship [Plaintiff] had between [his] attorney and [him]self." (*Id.*) The letter itself is attached to the Amended Complaint. (*Id.* Ex. E.) The letter states that Candidus "reported the letter in question was written in cursive, signed with a female's first name and had no legal letterhead," and on that basis "questioned" Plaintiff. (*Id.*) Plaintiff replied that the letter "was from a friend." (*Id.*) Candidus told Plaintiff that "personal mail is handled differently" than legal mail. (*Id.*) The letter further stated that on October 22, 2016, Plaintiff "told Sergeant Candidus the letter was from a personal friend who does some legal work for [Plaintiff]," and that "[t]he hand written letter was sent to the mailroom for processing and delivery." (*Id.*) The letter concluded that "[a]lthough the procedures [of Directive 4421] weren't followed correctly, I find your rights were not violated because you did receive your privileged correspondence." (*Id.*)

4

right to attorney-client privilege was infringed." (*Id.* Ex. D (CORC appeal).) Plaintiff alleges he has received "no response or disposition" from the CORC. (*Id.* at 10.)

  C. Procedural Background

  Plaintiff mailed his initial Complaint on November 10, 2016, which was filed in this Court on November 15, 2016. (Compl. (Dkt. No. 2).) On January 31, 2017, the Court granted Plaintiff's request to proceed in forma pauperis. (Dkt. No. 6.) On February 14, 2017, the Court directed Plaintiff to amend his Complaint to "provide facts suggesting that Defendants have subjected him to regular and unjustifiable interference with his mail," and to "provide facts suggesting that Defendants deliberately and maliciously lost his legal mail, and that Defendants' conduct frustrated or hindered Plaintiff's ability to pursue his other legal actions." (Order To Amend 3–4 (Dkt. No. 7).) Plaintiff filed the instant Amended Complaint on March 30, 2017. (Dkt. No. 8.)

  On June 27, 2017, Defendants filed a letter requesting a pre-motion conference to discuss a proposed Motion To Dismiss. (Dkt. No. 13.) On August 1, 2017, the Court granted the request and set a briefing schedule for the Motion To Dismiss. (Dkt. No. 14.) On September 1, 2017, Defendants filed their Motion To Dismiss and accompanying papers. (*See* Not. of Mot.; Defs.' Mem.) Plaintiff did not submit a response to Defendants' Motion. On October 16, 2017, Defendants filed a letter requesting the Motion be deemed fully submitted. (Dkt. No. 23.) On October 17, 2017, the Court granted Defendants' request and deemed the Motion fully submitted. (Dkt. No. 24.)

  On February 23, 2018, Plaintiff filed an application for pro bono counsel. (Dkt. No. 26.) The Parties filed submissions as to the application. (Dkt. Nos. 28, 30, 32.) On September 20, 2018, the Court issued an Order denying the application without prejudice. (Dkt. No. 34.)

II.  Discussion

A.  Standard of Review

Defendants move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* Defs.' Mem. 1.)

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)).  "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same).  However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)."  *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)).  This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules.  *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also*

*Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

### 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on reh'g on other grounds*, 585 F.3d 559 (2d Cir. 2009) (en banc)). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (internal quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings a plaintiff must either come forward with controverting evidence

or rest on the pleadings if the evidence offered by the defendant is immaterial. *Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017). If the extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing. *Carter*, 822 F.3d at 57.

    2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not

8

'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

Finally, the "failure to oppose Defendants' [M]otion [T]o [D]ismiss does not, by itself, require the dismissal of [Plaintiff's] claims." *Leach v. City of New York*, No. 12-CV-2141, 2013 WL 1683668, at *2 (S.D.N.Y. Apr. 17, 2013) (citations omitted). Rather, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).

B. Analysis

Defendants move to dismiss the Amended Complaint on the grounds that Plaintiff's claims are barred because Plaintiff failed to exhaust his administrative remedies prior to the initiation of this action, as required by the Prison Litigation Reform Act ("PLRA"); that Plaintiff's access-to-courts and interference-with-mail claims must fail on the merits for failure to state a claim; and that Defendants are entitled to qualified immunity. (*See* Defs.' Mem. 7–21.) The Court need only address Defendants' exhaustion argument.

10

1. Applicable Law

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citation and some internal quotation marks omitted). The exhaustion requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 520, 532 (2002), and includes actions for monetary damages even if monetary damages are not available as an administrative remedy, *see Booth v. Churner*, 532 U.S. 731, 741 (2001). Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (alterations, citations, and internal quotation marks omitted). Indeed, the PLRA demands "strict compliance with the grievance procedure . . . , or else dismissal must follow inexorably." *McCoy v. Goord*, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) (alteration, internal quotation marks, and citations omitted). Exhaustion must occur *prior* to Plaintiff's filing suit; "[s]ubsequent exhaustion after suit is filed therefore is insufficient." *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001); *see also Lopez v. Cipolini*, 136 F. Supp. 3d 570, 582 (S.D.N.Y. 2015) (noting that "subsequent exhaustion after suit is filed is insufficient, even where, as here, it might seem more efficient simply to proceed with the lawsuit rather than dismiss it only to see it immediately re-filed" (internal citations and quotation marks omitted)).

However, the PLRA contains a "textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. "[T]he exhaustion requirement hinges on the 'availab[ility]' of administrative

11

remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* Available "grievance procedures . . . are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal citation and quotation marks omitted). In *Ross*, the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* An administrative remedy is unavailable: (1) where "it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates," *id.* (citation omitted); (2) where the procedure is "so opaque that it becomes, practically speaking, incapable of use" such that "no ordinary prisoner can discern or navigate it," *id.*; or (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," *id.* at 1859–60. It bears noting, however, that the "three circumstances discussed in *Ross* do not appear to be exhaustive," *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), but rather "guide the Court's inquiry," *Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016) (internal citation omitted).

Finally, failure to exhaust is an affirmative defense, not a pleading requirement. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013). "Inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Accordingly, "dismissal is appropriate on a motion to dismiss where failure to exhaust is clear on the face of the complaint." *Brinson v. Kirby Forensic Psych. Ctr.*, No. 16-CV-1625, 2018 WL 4680021, at *6 (S.D.N.Y. Sept. 28, 2018); *see also McCoy*, 255 F. Supp. 2d at 249 ("If failure to exhaust is apparent from the face of the complaint, however, a Rule 12(b)(6) motion is the proper vehicle." (citation omitted)).

2. Application

The grievance program applicable here is the DOCCS Inmate Grievance Program ("IGP"). *See* 7 N.Y.C.R.R. § 701 *et seq*. The IGP provides for a three-step grievance process. *See Colon v. Annucci*, No. 17-CV-4445, 2018 WL 4757972, at *17 (S.D.N.Y. Sept. 28, 2018); *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *6 (S.D.N.Y. Sept. 28, 2018). At the first step, an inmate submits a written grievance to the IGRC, 7 N.Y.C.R.R. § 701.5(a), which attempts to resolve the issue "informally," and if there is no resolution, "conduct[s] a hearing to answer the grievance or make a recommendation to the superintendent," *id.* § 701.5(b). If the IGRC's determination is adverse to the inmate, at the second step the inmate may appeal to the superintendent within seven calendar days. *Id.* § 701.5(c). And if the superintendent's determination is adverse to the inmate, at the third and final step the inmate may appeal to the Central Office Review Committee ("CORC") within seven calendar days. *Id.* § 701.5(d). "[O]nly after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted." *Gardner v. Daddezio*, No. 07-CV-7201, 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008). That is, only after completing all three steps of the IGP may an inmate initiate suit. *See Williams*, 829 F.3d at 122.

It is not clear from the Amended Complaint when Plaintiff filed his first-step grievance to the IGRC, when the IGRC completed its review, or when Plaintiff appealed the IGRC decision to Superintendent Perez. (*See* Am. Compl. 3–4.) The Amended Complaint does show, however, that Perez issued her second-step decision as to Plaintiff's appeal on November 15, 2016. (*See* Ex. D.) Plaintiff then appealed the Perez's decision to the CORC one day later, on November 16, 2016. (*Id.*) Therein lies the exhaustion problem: Plaintiff mailed his initial Complaint in this Action on November 9, 2016, six days prior to Perez's decision and seven days prior to

Plaintiff's final-step appeal to the CORC. (*See* Compl. 7 (Dkt. No. 2).)[5] As Defendants point out, this means that "[i]t would be impossible for the CORC to have rendered a final determination of [P]laintiff's grievance" before Plaintiff's initial Complaint was filed. (Defs.' Mem. 10.) Indeed, the initial Complaint acknowledges that, as of November 9, 2016, the grievance "was sent to the Superintendent for appeal [and] there has been no response," (Compl. 4), and the Amended Complaint acknowledges that there was "no final disposition" from the CORC on his grievance before he filed suit, (Am. Compl. 10). It is therefore clear from the face of the initial Complaint and the Amended Complaint that Plaintiff failed to exhaust his administrative remedies before initiating suit. *See McGee v. New York City*, No. 16-CV-9549, 2018 WL 565721, at *3 (S.D.N.Y. Jan. 24, 2018) ("[I]t is clear from the face of [the plaintiff's] complaint that he has failed to exhaust his administrative remedies . . . . [because] [the] [p]laintiff failed to proceed past the first step of the IGP, and has thus failed to satisfy the PLRA's exhaustion requirement." (internal citations omitted)); *Buckner v. Ponte*, No. 17-CV-1952, 2017 WL 6994218, at *3 (S.D.N.Y. Aug. 10, 2017) ("It appears from the face of the [c]omplaint that the plaintiff did not complete the grievance process before filing"); *Perez v. City of New York*, No. 14-CV-7502, 2015 WL 3652511, at *3 (S.D.N.Y. June 11, 2015) (granting motion to dismiss for failure to exhaust where the "timing of the Complaint . . . shows that the grievance process could not have been completed when [the] [p]laintiff commenced th[e] action").

---

[5] Under the prison mailbox rule, an inmate's civil complaint is considered filed on the date it is delivered to prison authorities for mailing. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993). The Court notes that its analysis is not altered by considering instead the date Plaintiff's initial Complaint was received by the Court — November 15, 2016 — as that is the date of Perez's second-step decision and one day prior to Plaintiff's final-step appeal to the CORC. (Am. Compl. Ex. D.)

14

Nor does any exception to exhaustion apply. Plaintiff makes no showing whatsoever that the IGP is "unable" to provide relief to grievances, or that prison officials are "consistently unwilling" to provide relief, or that he has been "thwart[ed] . . . from taking advantage" of the IGP "through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60. And Plaintiff cannot show that the IGP is "so opaque that it [is] . . . incapable of use," *id.* at 1859, for the Amended Complaint itself clearly demonstrates that Plaintiff filed his third-step appeal to the CORC, as required by the IGP, on November 16, 2016, (*see* Am. Compl. Ex. D). *See Chin v. Burnstein*, No. 15-CV-7860, 2017 WL 1169670, at *9 (S.D.N.Y. Mar. 28, 2017) ("Plaintiff's argument that CORC review was unavailable is belied by the fact that he formally appealed the . . . grievance to CORC."). Plaintiff thus "alleges no facts from which the Court could infer that the IGP was 'unavailable' to him" at the time his initial complaint was filed. *Hydara v. Burger*, No. 14-CV-1415, 2018 WL 1578390, at *5 (S.D.N.Y. Mar. 29, 2018).

To be sure, Plaintiff does contend in the Amended Complaint — which was filed on March 23, 2017, some four months after his appeal to the CORC, (*see* Am. Compl. 13) — that he "appealed to the highest level of the grievance process and was given no response or disposition," (*id.* at 10). "The Court construes this statement as an allegation that an administrative remedy was not available to Plaintiff because of the CORC's delay," *Lopez*, 136 F. Supp. 3d at 583, and that therefore an exception to exhaustion applies. Such an allegation misses the mark. Even assuming the CORC's undue delay as of the date the Amended Complaint was mailed, "at the time that Plaintiff filed [his] *initial* complaint, administrative remedies *were* available to [him] based on [his] pleadings and filings." *Id.* (emphases added). As noted, Plaintiff's initial Complaint was mailed on November 9, 2016, (*see* Compl. 7), but Perez's second-step decision was not issued until November 15, 2016, (*see* Am. Compl. Ex. D).

15

"Accordingly, at the time that Plaintiff filed [his] [initial] Complaint, Plaintiff had yet to, at the very least, complete the third step in exhausting [his] administrative remedies, namely appealing the adverse grievance to the CORC." *Lopez*, 136 F. Supp. 3d at 583.

In sum, it is clear from the face of the Amended Complaint and the exhibits attached to it that Plaintiff failed to exhaust all available administrative remedies before filing suit, and that no exception to the exhaustion requirement applies. This action must therefore be dismissed.

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. Dismissal is without prejudice. *See McCoy*, 255 F. Supp. 2d at 252 ("A dismissal for failure to exhaust is usually without prejudice, because failure to exhaust is ordinarily a temporary, curable, procedural flaw." (internal quotation marks and citations omitted). Plaintiff may re-institute suit after properly exhausting his administrative remedies or demonstrating their unavailability. *See Lopez*, 136 F. Supp. 3d at 584.[6]

---

[6] The Court does not address Defendants' merits arguments (1) that Plaintiff's access-to-courts claim must fail (a) because Plaintiff does not allege deliberate and malicious conduct and (b) because Plaintiff cannot show a cognizable injury and therefore lacks standing, (*see* Defs.' Mem. 11–15); (2) that Plaintiff's interference-with-mail claim must fail as to Candidus and Vines because Plaintiff has stated only a single incident of interference, (*see id.* at 16–17); (3) that Plaintiff's interference-with-mail claim must fail as to all Defendants because Plaintiff cannot show any Defendant acted with invidious intent or caused actual harm, (*see id.* at 16, 18); and (4) that Defendants are entitled to qualified immunity, (*see id.* at 19–21). Plaintiff would be wise, however, to address these arguments should he re-institute his suit, given that the Court has already once ordered Plaintiff to correct substantive deficiencies in his initial Complaint. (*See* Order To Amend.)

SO ORDERED.

Dated: December 21, 2018
      White Plains, New York

                                            KENNETH M. KARAS
                                            UNITED STATES DISTRICT JUDGE